IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOSE ALBERTO GOMEZ-GONZALEZ, | § § § |
| *Petitioner*, | § § |
| | §  No. 5:26-CV-598-DAE |
| v. | § § |
| VERGARA, *et al.*, | § § § |
| *Respondents*. | § § |

<u>ORDER</u>

Before the Court is Petitioner Jose Alberto Gomez-Gonzalez's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. # 1). The Court finds this matter suitable for disposition without a hearing. After careful consideration of the parties' briefings and the relevant law, the Court **GRANTS** the Petition for Writ of Habeas Corpus (Dkt. # 1) for the reasons that follow.

<u>FACTUAL BACKGROUND</u>

Petitioner Gomez-Gonzalez is a citizen of Mexico who is currently being detained at the South Texas Detention Facility in Pearsall, Texas. (Dkts. ## 1-2 at 5, 11; 1 at ¶¶ 27, 40–42.) Petitioner is a 24-year-old college student who, prior to his detention, was enrolled at Texas State University in San Marcos, Texas and was scheduled to graduate in December 2025. (<u>Id.</u> at ¶ 1.)

1

Petitioner and his family entered the United States legally in February 2012 when Petitioner was 12 years old. (Id. at ¶ 40; Dkt. # 1-2 at 9 (noting that Petitioner and his family entered the country legally), 11 (attesting that Petitioner and his family entered the country legally by vehicle at a port of entry with B1/B2 Border Crossing Cards).) It appears that Petitioner and his family were detained upon entry, notwithstanding the fact that they had B1/B2 Border Crossing Cards in their possession. (See Dkts. ## 1 at ¶ 41; 1-2 at 11 (explaining that the family had been temporarily detained).) On March 1, 2012, Petitioner and his family were granted humanitarian parole under the Immigration and Nationality Act ("INA") § 212(d)(5)(A). (Dkt. # 1 at ¶ 42.) Subsequently, on March 23, 2012, following an asylum officer's positive credible fear determination, Petitioner's family was issued a Notice to Appear ("NTA") and placed into full removal proceedings. (Dkts. ## 1 at ¶ 44; 1-2 at 2–3 (Notice to Appear), 11.)

On October 1, 2015, an immigration judge, in an exercise of discretion, administratively closed Petitioner's removal proceedings. (Dkts. ## 1 at ¶ 45; 1-2 at 8–9.) In making this determination, the immigration judge noted that Petitioner and his family entered the country legally, that they subsequently asked for asylum, that they were determined to have credible fears of persecution, that they were paroled into the country to await an asylum hearing that had still not occurred, and that they had no criminal or immigration history. (Dkt. # 1-2 at 9.)

2

Petitioner's humanitarian parole expired on January 16, 2015, but in the years that followed, the government took no action to either re-detain Petitioner or to reinstate Petitioner's removal proceedings. (Dkt. # 1-2 at 5.)

While living in the United States, Petitioner graduated high school and enrolled at Odessa Community College. (Dkt. # 1 at ¶ 46.) In August 2022, Petitioner transferred to Texas State University. (Id. at ¶ 47.) While in school there, Petitioner also worked part-time pursuant to a valid work authorization granted in connection with his pending asylum case. (Id. at ¶¶ 3, 47.) He was scheduled to graduate in December 2025 and had a job offer to work at Child Protective Services upon his graduation. (Id. at ¶¶ 15, 47.)

On August 14, 2025, nearly ten years after his removal proceedings were administratively closed and over ten years after his parole expired without action by the government, Petitioner was re-detained by Immigration and Customs Enforcement ("ICE") officers without notice or warning. (Dkt. # 1 at ¶ 49.) That day, Petitioner had been driving to visit his parents before the college semester started when he was pulled over by law enforcement for driving a couple miles over the speed limit. (Id. at ¶ 2.) Although Petitioner provided the officer with a valid Texas Driver's License and insurance, the officer inquired into Petitioner's immigration status. (Id. at ¶ 4.) When Petitioner told the officer that he was not a U.S. Citizen but was lawfully present in the country, the officer contacted ICE,

detained Petitioner,[1] and transported him to the county line, where an ICE agent was waiting. (Id. at ¶¶ 4, 7; Dkt. # 1-2 at 12.) Petitioner was then issued a new NTA. (Dkts. ## 1 at ¶ 54; 1-2 at 21–22.)

Since Petitioner's detention began on August 14, 2025, he has been held without the opportunity for a bond hearing. (See Dkt. # 1 at 13, 18.) Due to his continued detention, he has been unable to graduate college, was forced to breach the lease on his apartment, has lost job opportunities, has lost his liberty, and has lost money. (Id. at ¶ 18.)

On September 30, 2025, Petitioner filed a request for humanitarian parole to continue his studies and obtain his degree while his immigration case remains pending. (Id. at ¶ 57; Dkt. # 1-2 at 30–31.) To date, ICE has not responded to or even acknowledged receipt of Petitioner's request, despite Petitioner's efforts to follow up with the agency. (Dkt. # 1 at ¶¶ 58–59.)

PROCEDURAL HISTORY

On January 30, 2026, Petitioner filed his habeas petition. (Dkt. # 1.) On February 2, 2026, the Honorable Judge Orlando L. Garcia ordered Respondents Miguel Vergara, Director of San Antonio Field Office, United States Immigration

---

[1] The Concho County Deputy Sheriff who arrested Petitioner, Deputy Abel Quezada, told Petitioner that he had an active arrest warrant issued by ICE. (Dkt. # 1 at ¶ 5.) Petitioner asserts, however, that this statement was not true, as Petitioner's removal proceedings were administratively closed. (Id. at ¶¶ 5–6, 50–52.) Respondents do not contest this assertion. (See Dkt. # 6.)

4

and Customs Enforcement and Removal Operations; Bobby Thompson, Warden of the South Texas Detention Facility; Todd Lyons, Director of United States Immigration and Customs Enforcement; Kristi Noem, Secretary of the United States Department of Homeland Security; and Pamela Bondi, Attorney General, United States Department of Justice (collectively, "Respondents") to show cause within five days of service as to why the petition should not be granted. (Dkt. # 2.) That same day, this case was reassigned to the undersigned. (Dkt. # 4.)

Respondents Miguel Vergara, Todd Lyons, Kristi Noem, and Pamela Bondi (herein, "Federal Respondents")[2] filed a response to the Petition for Writ of Habeas Corpus on February 11, 2026, and Petitioner replied on February 17, 2026. (Dkts. ## 6; 7.)

## LEGAL STANDARD

A district court may grant a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The habeas petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." Villanueva v. Tate, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D.

---

[2] Respondent Thompson, Warden of the South Texas Detention Facility, has not joined the response.

Tex. Sept. 26, 2025) (internal citation and quotations omitted).  "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

## DISCUSSION

In his Petition, Petitioner challenges his mandatory detention as a violation of his Fifth Amendment due process rights, of the INA and applicable regulations, of the Administrative Procedure Act ("APA"), and of his Fourth Amendment right to be free from unreasonable search and seizure.  (Dkt. # 1 at 15–26.)

As an initial matter, the Court finds that it has jurisdiction over this case for the same reasons stated in previous orders.  Campuzano v. Noem, No. 1:25-cv-1715-DAE, 2026 WL 90062 (W.D. Tex. Jan 6, 2026); Fabian-Granados v. Bondi, No. 1:25-cv-2068-DAE, 2026 WL 90061 (W.D. Tex. Jan. 8, 2026); Silva v. Bondi, No. 1:25-cv-2155-DAE, 2026 WL 90060 (W.D. Tex. Jan. 12, 2026).  The Court also finds that, to the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile."  See Lorenzo C. P., v. Noem, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); see also Shi v. Lyons,

6

No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025); (Dkt. # 6 at 1 (asserting that Petitioner is ineligible for bond before an immigration judge)).

With respect to the merits of the Petition, the Court finds that Petitioner's detention violates his right to procedural due process under the Fifth Amendment of the United States Constitution.  Because the Court concludes that Petitioner's detention is unlawful on this basis alone, it does not reach Petitioner's other bases for relief.[3]  The Court's analysis proceeds in two steps: first, the Court will discuss whether and to what extent procedural due process applies to Petitioner; and second, the Court will analyze whether Petitioner's due process rights were violated.

---

[3] To the extent Respondents argue that Buenrostro prevents this Court's review of the Petitioner's due process claims, the Court, like other courts that have considered the question, finds such an argument unpersuasive.  See Valencia Reyes v. Noem, et al., No. SA-25-CA-01921-XR, Dkt. # 7, at *6–8 (W.D. Tex. Feb. 25, 2026) (collecting cases).  Indeed, the Fifth Circuit's decision was limited only to that petitioner's statutory interpretation arguments and did not reach any issue of whether a petitioner's detention violated the Fifth Amendment.  See Buenrostro-Mendez, 2026 WL 323330.  The Government acknowledged as much in their oral arguments by stating: "We have one issue before the Court now: the statutory question. . . . There's not, in other words, a due process claim here."  Oral Argument, Buenrostro-Mendez, 2026 WL 323330, at 44:56–45:11 (5th Cir. Feb. 3, 2026), available at https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3.

I.      Whether Petitioner is Entitled to Due Process Clause Protections

The Fifth Amendment's Due Process Clause prevents the Government from "depriv[ing]" any "person . . . of liberty . . . without due process of law." U.S. CONST. amend. V.  This right is not limited to United States citizens; noncitizens are similarly entitled to due process under the Fifth Amendment. Trump v. J. G. G., 604 U.S. 670, 673 (2025);  Demore v. Kim, 538 U.S. 510, 523 (2003). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

Federal Respondents do not engage at length with Petitioner's procedural due process claim.  They devote one single paragraph to the claim in which they argue that (1) § 1225 of the INA, the provision under which Petitioner is allegedly detained, does not provide for a bond hearing and has been held to be facially constitutional; and (2) mandatory detention of an applicant for admission during full removal proceedings does not violate due process because constitutional protections are built into those proceedings.  (Dkt. # 6 at 4.)

Federal Respondents' first argument is inapposite.  Petitioner is not challenging the facial constitutionality of 8 U.S.C. § 1225 but the constitutionality of the mandatory detention statutes as applied to him.  (See Dkt. # 1 at ¶¶ 57, 63,

8

80.) While it is true as a matter of statutory construction that § 1225 permits mandatory detention, the question remains as to what process is due to people detained under that statute. Santiago v. Noem, No. EP-25-CV-361-KC, 2025 WL 2792588, at *7 (W.D. Tex. Oct. 2, 2025) ("In Jennings, the [Supreme Court] held the mandatory detention statutes . . . did not . . . require periodic bond hearings. . . But the Court expressly left open the constitutional due process question and remanded the case with instructions that the lower courts consider the constitutional issue in the first instance." (citing Jennings v. Rodriguez, 583 U.S. 281, 312 (2018))). For the same reasons, Federal Respondents' second argument is unpersuasive. It is for the courts to decide whether the constitutional protections afforded pursuant to a given statute are adequate. The mere existence of some protections under a statute does not relieve the Court of its responsibility to ensure that those protections are indeed constitutionally sufficient. See Jennings, 583 U.S. at 312.

    Insofar as Federal Respondents argue that an as-applied due process challenge is precluded by the Supreme Court's opinion in Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020), this Court does not agree. In Thuraissigiam, the Supreme Court rejected a noncitizen's due process claim, explaining that people detained at or near the border are treated as "applicants for admission" and are afforded "only those rights regarding admission that Congress

9

has provided by statute." 591 U.S. at 140. However, as noted by other courts, while Thuraissigiam limited the scope of due process claims available to "applicants for admission," its statements and holdings must be read in context. See Lopez-Arevelo v. Ripa, 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025) (discussing Thuraissigiam). And when reading Thuraissigiam in context, the Court does not understand the decision to confine Petitioner's due process rights to only those set forth in the INA. See id. at 681–84.

Several courts in this Circuit have distinguished Thuraissigiam from cases like Petitioner's for reasons this Court finds persuasive. For example, in Lopez-Arevelo, the court rejected the respondents' attempts to rely on Thuraissigiam because: (1) Thuraissigiam addressed challenges to deportability rather than challenges to the fact or length of detention; and (2) the petitioner in Thuraissigiam did not have a significant presence in the United States. 801 F. Supp. 3d at 681–85. Therefore, the Lopez-Arevelo court concluded, the petitioner could pursue his due process claim because the petitioner "challenge[d] his detention, not his deportability" and "because he was detained after years of presence in the United States, rather than on the threshold of initial entry." Id. at 685. The same reasoning applies here. See also Trump v. J. G. G., 604 U.S. 670, 673 (2025) (reaffirming that the Fifth Amendment entitles noncitizens to due process of law).

The fact that Petitioner was detained upon entry and then released via a grant of humanitarian parole does not change the Court's conclusion. (See Dkt. # 6 at 4, 8 ("Petitioners [sic] parole did not bestow any additional rights to Petitioner.")) In this case, Petitioner was paroled into the country when he was 12 years old. When his parole expired approximately three years later, the government took no action to re-detain Petitioner or to reinstate removal proceedings against him. Indeed, Petitioner's removal proceedings were administratively closed over a decade ago. And in the decade since, and in the over 14 years since his initial entry into the country, Petitioner has lived continuously in the United States. He has graduated high school, he has attended college, he has obtained work authorization and a Driver's License, and he has built a community and life. This situation is a far cry from that of Thuraissigiam, even if Thuraissigiam were applicable to the case at hand. See Lopez-Arevelo, 801 F. Supp. 3d at 681–85 (finding Thuraissigiam inapplicable where the petitioner was paroled into the country via an order of recognizance); Santiago, 2025 WL 2792588, at *7–10 (finding Thuraissigiam inapplicable where the petitioner was living in the United States under a grant of DACA); Vieira v. De Anda-Ybarra, 806 F. Supp. 3d 690, 698–700 (W.D. Tex. 2025); Hernandez-Fernandez v. Lyons, No. 5:25-cv-773-JKP, 2025 WL 2976923, at *8 (W.D. Tex. Oct. 21, 2025); Zafra v. Noem, No. EP-25-cv-521-DB, 2025 WL 3239526, at *3 (W.D. Tex. Nov. 20,

2025). Federal Respondents' solitary, non-binding case to the contrary does not convince the Court otherwise. (See Dkt. # 6 at 8, citing Gutierrez-Soto v. Sessions, 317 F. Supp. 3d 917, 929 (W.D. Tex. 2018)).

II.     Whether Petitioner's Due Process Rights Have Been Violated

Having found that Petitioner is entitled to due process, the Court turns to whether Petitioner's arguments are meritorious. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in Mathews[.]" Martinez v. Noem, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first factor weighs heavily in Petitioner's favor. "'The interest in being free from physical detention' is 'the most elemental of liberty interests.'"

Martinez v. Noem, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025) (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)).  In this case, Petitioner lived his life free from custody in the United States for almost fourteen years prior to his recent detention.  And, since being detained on August 14, 2025, Petitioner has been in custody for nearly six months, without the possibility of release on bond.  "The Supreme Court has repeatedly affirmed that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'"  Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 755 (1987)).  This interest "deserves great weight and gravity" and thus weighs heavily in Petitioner's favor.  See Vieira, 806 F.Supp.3d at 701; see also Lopez-Arevelo, 801 F. Supp. 3d at 685–86 (collecting cases that have recognized that once released from immigration custody, noncitizens acquire a "a protectable liberty interest in remaining out of custody on bond").

On the second factor, courts consider "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks."  Martinez v. Noem, 2025 WL 2598379, at *3 (quoting Gunaydin v. Trump, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025)).  Here, there is a high risk of erroneous deprivation of Petitioner's liberty since he is being detained without the opportunity for an

13

individualized bond hearing, depriving him of the ability to contest the reasonableness of his detention. See Vieira, 806 F.Supp.3d at 701 ("The risk lies in the automatic continued deprivation of liberty . . ."). There would be significant value added by additional safeguards, such as a bond hearing or pre-detention notice, that would reduce the likelihood of an erroneous loss of liberty. This is particularly true for Petitioner, who has received no individualized explanation as to the decision to re-detain him after years of living free of detention. (See Dkt. # 1 at ¶ 75.) "[A]bsent some change in [Petitioner's] personal circumstances, the decision to incarcerate [him] after [] years at liberty gives rise to an elevated concern that [he] has been detained without a valid reason." Santiago v. Noem, EP-25-cv-361-KC, 2025 WL 2792588, at *12 (W.D. Tex. Oct. 2, 2025); see also Valencia Reyes, No. SA-25-CA-01921-XR, Dkt. # 7, at *24. Thus, this factor also weighs in Petitioner's favor.

    The third factor is the Government's interest. See Mathews, 424 U.S. at 335. The Government has a legitimate interest "in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community." Lopez-Arevelo, 801 F.Supp.3d at 686–87. But where Respondents have already made the decision to release Petitioner years ago, that decision "in and of itself[] 'reflects a determination . . . that the noncitizen is not a danger to the community or a flight risk.'" Id. (citing Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D.

14

Cal. 2017), aff'd 905 F.3d 1137 (9th Cir. 2018)).  Federal Respondents do not assert that any considerations have changed since that determination was made.  (See Dkts. ## 6; 1 at ¶ 16 (Petitioner has not been arrested or charged with crimes of moral turpitude or felonies).)  Moreover, such an interest could be adequately protected through individualized bond hearings—process that Federal Respondents find unnecessary.  As another court in this District stated: "Respondents make no meaningful representation that the burden of providing this additional increment of process is beyond their ability.  Instead, they only maintain that due process does not require it."  Valencia Reyes, No. SA-25-CA-01921-XR, Dkt. # 7, at *25.  Thus, as applied to this Petitioner, this factor is neutral.

In weighing all three factors, the Court finds the scale tips in Petitioner's favor; thus, Petitioner's detention without an opportunity to challenge his detention through an individualized assessment violates his right to procedural due process under the Fifth Amendment of the United States Constitution.

III.   Appropriate Relief

On the issue of appropriate relief, the Court is persuaded that it need not depart from the "typical remedy" in habeas cases challenging the lawfulness of detention, which "is, of course, release."  See Munaf v. Geren, 553 U.S. 674, 693 (2008).  Further, ordering a bond hearing under these circumstances would require the Immigration Judge to do that which he believes he lacks authority to do

15

following Matter of Yajure Hurtado, 29 I&N Dec. 216, 220 (BIA 2025).  The Court instead finds that the more appropriate remedy here is release.[4]  See Azua-Zuniga v. Bondi et al., No. 1:26-cv-287-RP (W.D. Tex. Feb. 20, 2026) (finding support for the same remedy under similar circumstances); Valencia Reyes, No. SA-25-CA-01921-XR, Dkt. # 7, at 25 (same); Longoria Mendoza v. Noem, et al., No. 5:26-CV-0728-JKP, Dkt. # 9, at *17–18 (W.D. Tex. Feb. 26, 2026) (same).

       Indeed, the Court notes its agreement that bond hearings are "no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause."  Cruz-Reyes v. Bondi, No. 5:26-cv-60, 2026 WL 332315, at *6 (S.D. Tex. Feb. 3, 2026) (quoting Gonzalez v. Joyce, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025)).  "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment."  Gonzalez, 2025 WL 2961626, at *5.

---

[4]  The Administration, in widely publicized statements, has said its enforcement efforts target violent criminals and the "worst of the worst."  Clearly, the Petitioner in this case, who entered the country as a child, has no known criminal history, and who is simply trying to finish his college degree is not the violent criminal or danger to the community to which the Administration refers.

16

As a final matter, "[a]lthough Petitioner invokes jurisdiction under 28 U.S.C. §§ 1331 and 2241 and seeks attorney fees, the Court treats the instant action solely as a habeas action under § 2241." Davila Mercado v. Lyons, No. 5:25-CV-1623-JKP, 2025 WL 3654268, at *7 (W.D. Tex. Dec. 11, 2025). Here, as in Davila Mercado, Petitioner has not specifically sought any non-habeas relief and has paid only the minimal habeas filing fee. Accordingly, the Court denies any request for attorney's fees in this case. Id.; Aldana Perez v. Noem, et. al., No. SA-25-CV-01534-XR, 2025 WL 3654262, at *7 (W.D. Tex. Dec. 5, 2025); Barco v. Witte, 65 F.4th 782, 785 (5th Cir. 2023) (holding that the Equal Access to Justice Act does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions).

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus. (Dkt. # 1.) It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Jose Alberto Gomez-Gonzalez from custody, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, to a public place by **no later than 5:00 p.m. on March 1, 2026**.

2. Respondents must **NOTIFY** Petitioner's counsel by email (ebeckettlaw@gmail.com) of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release**.

3. Respondents are enjoined from further detaining Petitioner without first conducting a bond hearing, scheduled with notice to Petitioner's attorneys

and set at a date agreed upon by both parties. At such a hearing, Respondents bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's detention.

4. The parties shall **FILE** individual status reports no later than **6:00 p.m. March 2, 2026**, detailing their compliance with this Order.

   **IT IS SO ORDERED**.

   **DATED**: San Antonio, Texas, February 27, 2026.

   _____
   David Alan Ezra
   Senior United States District Judge